UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————x

SONIA TALAVERA, As Administrator of the
Estate of Herman Tito Diaz,

        Plaintiff,

  -against-

CITY OF NEW YORK, ET AL.,

        Defendants.

————————————————————————————x

22 Civ. 6670 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/22/22

## SCHEDULING ORDER

McMahon, J.:

      The City and Defendants have asked the court by letter motion for a stay "pending the resolution of an open investigation by the New York City Department of Correction Investigation Division ("DOC ID") into the underlying allegations in this case regarding the death" of Plaintiff's decedent, as well as a "corresponding adjournment for all deadlines and conferences in this case pending the conclusion of the DOC ID investigation into the underlying incident." (Dkt. No. 16, at 1). Although the City asks for a sixty day stay, with a status letter to be filed after thirty days (*id.*), it is in essence asking for an open-ended stay until such time as DOC ID finishes its investigation. That is apparent from the last sentence of the request letter, which asks that the City be allowed to update the court on the status of the DOC ID investigation "every 30 day [sic], *until it has been concluded." (Id.*). It is perfectly apparent that the City intends to ask for another extension of time if the DOC ID investigation is not over within 60 days.

      Counsel for Plaintiff opposes the request, noting that DOC ID has already had eight months to investigate this incident and that the New York City Board of Corrections has already completed an investigation and produced a detailed report that was published more than six months ago. (Dkt. No. 17, at 1).

      The City's request, whether for a 60 day stay or a stay until the conclusion of the DOC ID investigation, is denied. The parties will abide by the schedule set at the end of this order.

      The City argues that failure to grant a stay until the end of the DOC ID investigation would result in its inability to produce documents in response to discovery requests. But the fact that DOC is conducting an investigation is no defense to its failure to produce documents in a lawsuit in federal court. And no "deliberative privilege" protects from disclosure documents that were produced contemporaneously with or immediately after the underlying incident, those are documents that Plaintiff has as much interest in reviewing promptly as does DOC ID.  Nor does

any DOC ID "deliberative privilege" shield documents that were generated by the Board of Corrections – or documents, including videotapes and witness statements, that were relied upon in producing the report of the Board of Corrections – from immediate discovery.

The mere fact that DOC ID may be examining those documents does not render them "deliberative" within the meaning of that privilege. The documents that were generated contemporaneously with the incident may be "pre-decisional" in that they were generated prior to the conclusion of the investigation; but they are NOT deliberative, because they do not represent the thoughts and conclusions of the investigating agency. Defendants need to get out of their heads the notion that this court will shield all documents relating to this incident from discovery for any significant period of time. DOC ID is perfectly free to invoke the deliberative privilege as to documents that it (the deliberative body) generates while conducting its investigation, including commentaries that the investigators prepare and drafts of any final report. If it does so, we will deal with those objections document by document – which is how privilege issues are decided. But there is no basis to stall the prosecution of this lawsuit for an indeterminate period of time because of what are essentially discovery disputes over a limited range of documents that may be covered by the deliberative privilege. If Defendants refuse to turn over relevant non-deliberative documents that are quite properly discoverable simply on the ground that they are being reviewed in connection with some long running internal investigation, this court will be perfectly happy to impose appropriate sanctions.

Nor does any "deliberative privilege" protect the witnesses to the underlying incident from testifying at deposition in a federal proceeding. There is no reason why witnesses cannot be noticed for deposition.

I fear I disagree with the City's assertion that the Plaintiff will not be prejudiced by a temporary stay in this case. I certainly disagree that the pendency of the DOC ID investigation diminishes any potential prejudice resulting from the delay in this matter's being readied for trial before a jury. Plaintiff has a right to her day in court and she has a right to have that day come soon. This court has no reason to believe that DOC ID will complete its investigation with dispatch; it has not managed to get it done over the last eight months, and I am positive that, if I do not take immediate care to move this lawsuit along, further delay will be in the offing. I am not prepared to adjourn this case, and compromise the interests of the Plaintiff and other interested parties, so that DOC can move at its current turtle-like pace.

Finally, Corporation Counsel says that a stay is necessary because it cannot make representational decisions until the DOC ID investigation ends. I reject that argument out of hand. If the Board of Corrections has issued a report, and if this incident was caught on camera, the City can man up and make a call – to represent or not. By law, the decision belongs to the Corporation Counsel – not to DOC ID. Corporation Counsel has known who was involved in this incident for many months. It could have used that time to make a decision about representation. As Plaintiff's counsel says, if Corporation Counsel has had difficulty speaking to officers because the DOC ID investigation is pending, it should work things out with the union. This court will not stand idly by and keep this lawsuit on hold just because DOC ID cannot seem to get on with it. Nor will this court allow any party, including the union representing potential defendants, to keep us from moving forward.

However, Corporation Counsel cannot possibly decide whether it will represent any specific individual defendants until Plaintiff decides whom to sue. Plaintiff says she has not yet sued any individuals, and in their letter opposing a stay, counsel for Plaintiff indicate that they are not planning to name any officer "in the imminent future." (Dkt. No. 17, at 2). That is not a situation this court is prepared to abide. Plaintiff has filed a lawsuit; she needs to litigate it. We are not going to get this case ready for trial as against the City, only to have to start all over again when the inevitable happens and individuals are added as defendants. Having named John Doe defendants as well as the City, Plaintiff must promptly identify those John Does, so that they can be ready to go to trial on the expedited schedule this court intends to set. That means they must be identified and served within the next 45 days. If Plaintiff is not prepared to add the John Does by name, then perhaps I will have to stay all proceedings in this lawsuit until such time as Plaintiff makes that decision. That way, we will have all parties available to participate in discovery and don't have to do things twice.

So that Plaintiff can make decisions about whom to sue, Corporation Counsel is directed to provide counsel, on or before December 9, 2022, with the names and last known addresses of all personnel from DOC and/or the New York City Health and Hospitals Corporation who interacted with Plaintiff's decedent, Herman Tito Diaz, on March 18, 2022; or who were on duty in any area of the jail at Rikers Island where Plaintiff's decedent was at that time during that day, including but not limited to the unit on which Plaintiff's decedent was housed and any medical unit to which he was taken by other inmates. *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997). To be quite specific: this order extends to the "A" post officer (*see* Board of Corrections report, Dkt. No. 17-1, at 5), all officers who opened doors to allow Plaintiff's decedents to be taken to the medical clinic, and any officers who were supposed to be on duty but were not on the day of Mr. Diaz's death. The identities of these individuals is not shielded by any privilege, "deliberative" or otherwise. Armed with this information, Plaintiff's counsel should decide who the John Doe defendants are, obtain summonses and serve them. That way Corporation Counsel will know who is being sued and can make representation decisions and anyone who is not going to be represented by Corporation Counsel can hire a lawyer. And we can get this lawsuit moving. I will be setting a short and intensive discovery schedule at the initial pretrial conference; everyone who is going to be a party needs to be represented by that date.

In order to allow for the response to the court's *sua sponte Valentin* order and for suit to be brought against individuals currently identified as John Does, as well as to give DOC ID a few short weeks to complete its investigation, I will stay the deadline for filing an answer for 45 days — no more. I expect Plaintiff's counsel to get the individual defendants into this lawsuit. The initial pretrial conference will take place on February 27, 2023 at 10:00 AM.

I am placing this case on the court's "rocket docket." It will be ready for trial by June 30, 2023; if it is not ready, it will be assigned a trial date in any event, and the parties can go to trial without finishing discovery (and with the benefit of adverse inference sanctions if any should be warranted). The City and Plaintiff's law firm should be prepared to put as many resources on the case as will be required to get that done.

The City's application for a stay is denied. The Clerk if directed to remove Dkt. No. 16 from the court's list of open motions.

Dated: November 22, 2022

_____
U.S.D.J.